IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS MICHAEL BROWN, an )
individual; on behalf of himself and all )
others similarly situated, )
    Plaintiffs, )
  )
       v. )    Civil Action No. 14-0266
  )    United States Magistrate Judge
SKLAR - MARKIND a/k/a MARKIND )    Cynthia Reed Eddy
LAW GROUP, P.C. a/k/a LAW OFFICES )
OF ANDREW SKLAR, P.C., ANDREW )
SKLAR, individually and in his official )
capacity, LLOYD MARKIND, individually )
and in his official capacity, JORDAN W. )
FELZER, individually and in his official )
capacity, and JOHN AND JANE DOES )
NUMBERS 1 THROUGH 25, )
    Defendants. )

## MEMORANDUM OPINION

### I.      Introduction and Background

Plaintiff Thomas Michael Brown filed a lawsuit, in his own behalf and on behalf of a

putative class, stating a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.*, for Defendants' allegedly improper debt collection tactics. Defendants are

Sklar-Markind, a/k/a Markind Law Group, P.C., a/k/a Law Offices of Andrew Sklar, P.C.,

("Sklar-Markind"), attorneys Andrew Sklar, Lloyd Markind and Jordan W. Felzer, and 25 John

and Jane Does.  Complaint (ECF No. 1), at ¶¶ 3-8, 9-17. The John and Jane Does are, Plaintiff

alleges, natural persons or business entities responsible for or involved in creating and/or

implementing the unlawful debt collection practices. *Id.*, ¶ 8. Plaintiff identifies Defendants as

debt collectors within the meaning of the FDCPA, and alleges that in their efforts to collect a

debt he owed their client in a civil action filed in the Court of Common Pleas of Allegheny

County, Pennsylvania, Defendants made false or misleading representations with regard to the character and legal status of his debt and his obligation to reimburse the cost of the debt collectors' services. *Id.*, at ¶¶ 22-23, 44-49. He further alleges "that the creditor of the Brown Obligation either directly or through intermediate transactions assigned, placed, or transferred the Brown Obligation to Sklar-Markind for collection." *Id.*, at ¶ 21. While the Complaint does not identify the "creditor of the Brown Obligation," it references a "Pennsylvania Simple Interest Vehicle Installment Contract" as the "only writing upon which the Defendants rely in order to claim attorneys fees." *Id.* ¶ 32.

Defendants filed a Motion to Compel Arbitration and Stay Proceedings (ECF No. 14), attaching the Pennsylvania Simple Interest Retail Installment Sales Contract ("Sales Contract") (ECF No. 14-1) Plaintiff executed with Woltz & Wind Ford, Inc. in February 2011, for the purchase of a 2011 Ford Fiesta. The Sales Contract, among other things, requires Plaintiff to arbitrate all claims arising out of or in relation to the application for credit, the contract, or "any resulting transaction or relationship." Woltz & Wind simultaneously assigned its rights, privileges and remedies to the Ford Motor Credit Company ("FMCC"). The Fiesta was ultimately repossessed, and FMCC retained Sklar-Markind to represent it in an action to recover the deficiency between the amount for which the repossessed vehicle was sold and the balance owed.

The Sales Contract contains a broad arbitration provision and class action waiver which states as follows:

**READ THIS ARBITRATION AGREEMENT CAREFULLY
AND IN ITS ENTIRETY**

# ARBITRATION

Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Seller ("us" or "we") (each a "Party") may choose at any time, including after a lawsuit is filed, to have *any Claim related to this contract* decided by arbitration. *Such Claims include but are not limited to* the following: 1) *Claims in contract, tort, regulatory or otherwise*; 2) Claims regarding the interpretation, scope, or validity of this clause, or arbitrability of any issue; 3) *Claims between you and us, your/our employees, agents, successors, assigns, subsidiaries, or affiliates*; 4) *Claims arising out of or relating to* your application for credit, this contract, *or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract*.

## RIGHTS YOU AND WE AGREE TO GIVE UP

If either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights:

- RIGHT TO A TRIAL, WHETHER BY A JUDGE OR JURY

- RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION

- BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT

- RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR

- OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT

**Rights You and We Do Not Give UP**: If a Claim is arbitrated, you and we will continue to have the following rights, without waiving this arbitration agreement as to any Claim: 1) Right to file bankruptcy in court; 2) Right to enforce the security interest in the vehicle, whether by repossession or through a court of law; 3) Right to take legal action to enforce the arbitrator's decision; and 4) Right to request that a court of law review whether the arbitrator exceeded its authority.

*You may choose the organization to conduct the arbitration subject to our approval.* The applicable rules (the "Rules") may be obtained from the

selected organization. If there is a conflict between the Rules and this contract, this contract shall govern. *This contract is subject to the* **Federal Arbitration Act (9 U.S.C. §1 et seq.)** and the Federal Rules of Evidence. The arbitration decision shall be in writing with a supporting opinion. *We will pay your total reasonable arbitration fees and expenses (not including attorney fees, except where applicable law otherwise provides) in excess of $125. We will pay the whole filing fee if we demand arbitration first.* Any portion of this arbitration clause that is unenforceable shall be severed, and the remaining agreements shall be enforced.

*Id.*, (italic emphasis added; bold in original).

Furthermore, this prominent disclaimer appears on the first page of the Sales Contract above the signature line: **"YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO BE BOUND BY THE ARBITRATION PROVISION ON THE REVERSE SIDE OF THIS CONTRACT."** *Id.* (bold uppercase in original).

According to FMCC's records, and the civil complaint filed in the Court of Common Pleas, Plaintiff's account went into default in October of 2012, and FMCC retained Sklar-Markind. *See* Civil Complaint, Court of Common Pleas of Allegheny County, Exhibit B to Motion to Compel (ECF No. 14-2), ¶¶ 6-8. Plaintiff's Complaint alleges that the Defendants were the attorneys for FMCC with respect to the underlying state court collection case. Specifically, Plaintiff states: "Brown is informed and believes, and on that basis alleges, that *the creditor of the Brown Obligation* either directly or through intermediate transactions *assigned, placed, or transferred the Brown Obligation to Sklar-Markind for collection*." Complaint (ECF No. 1) at ¶ 21 (emphasis added).

Plaintiff acknowledges that the motion to compel is "based on an arbitration clause in a retail sales installment sales agreement . . . between the Plaintiff and the client of the Defendants" and he does not dispute that he knowingly executed the Sales Contract containing the arbitration provision. Plaintiff's Brief in Opposition (ECF No. 19) at 1. In his response in

opposition to the motion to compel, Plaintiff also admits: that he purchased the Ford Fiesta on February 5, 2011; that he entered into the Sales Contract with Woltz & Wind attached to the motion to compel as Exhibit B; that he defaulted on the contract in October, 2012; and that Woltz & Wind assigned the Sales Contract to FMCC. Plaintiff's Response in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (ECF No. 18), at ¶¶ 1-3.

Thus, Plaintiff does not dispute the factual predicates underlying the motion to compel arbitration, but instead raises the following legal challenges to enforceability of the agreement to arbitrate:

> The Arbitration clause is not applicable in this case for several reasons. First, the Arbitration clause is unconscionable under Pennsylvania law. Second, even if the Arbitration clause is enforceable, the Plaintiff did not agree to arbitrate claims under the Fair Debt Collection Practices Act ("FDCPA") such as this case with the Defendants named in this matter. Third, the Arbitration clause is inapplicable to the Defendants.

Plaintiff's Brief in Opposition (ECF No. 19) at 1.

## II.     Relevant Authority

### A.  Federal Arbitration Act in General

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, ("FAA") embodies a liberal federal policy favoring arbitration and "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).   In *Khan v. Dell Inc.,* 669 F.3d 350 (3d Cir. 2012), the Court of Appeals for the Third Circuit discussed the legislative purposes behind the FAA:

> Congress passed the FAA "in response to widespread judicial hostility to arbitration agreements." *AT & T Mobility LLC v. Concepcion*, —— U.S. ——, ——, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). The FAA reflects a

"liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Supreme Court has unequivocally stated "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* However, the FAA respects the "fundamental principle that arbitration is a matter of contract," . . . and that "arbitration 'is a matter of consent, not coercion,'" . . . .

*Kahn*, 669 F.3d at 354 (additional citations omitted). *See also Flintkote Co. v. Aviva PLC*, ___ F.3d ___, 2014 WL 5033218, *4 (3d Cir. 2014) ("With its enactment of the FAA, Congress 'expressed a strong federal policy in favor of resolving disputes through arbitration.'") (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009)); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) ("FAA . . . establishes 'a uniform federal law over contracts which fall within its scope . . .' [which] places 'arbitration agreements on an equal footing with other contracts,' and requires courts to 'enforce them according to their terms.'") (quoting *Concepcion*, ___ U.S. ___, 131 S.Ct. 1740 at 1745).

In "the vast majority of cases, the arbitrability of a dispute is a question for judicial determination." *CardioNet*, 751 F.3d at 171 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The considerations informing that judicial determination were summarized by the Court of Appeals for the Third Circuit in *CardioNe*t:

> Until a court determines whether arbitration should be compelled, however, judicial review is limited to two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall with the language of the arbitration agreement?" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir.1998). Because neither party contests the validity of the Agreement, we confine ourselves to assessing whether the disputes at issue fall within the scope of the Agreement's arbitration clause.

> \* \* \*

[T]he fact that the parties have agreed to arbitrate some disputes does not necessarily manifest an intent to arbitrate every dispute that might arise between the parties, since "[u]nder the FAA, 'parties are generally free to structure their arbitration agreements as they see fit.'" *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 458, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (Rehnquist, J., dissenting) . . . . Accordingly, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock* [*Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 2856 (2010)]. (emphasis in original). Ultimately, then, whether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim.

We must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp.* . . . However, the Supreme Court has repeatedly warned against "overread[ing its] precedent[ ]" concerning the presumption of arbitrability. *E.g. Granite Rock*, 130 S.Ct. at 2857. The presumption in favor of arbitration does not "take [ ] courts outside [the] settled framework" of using principles of contract interpretation to determine the scope of an arbitration clause. *Id*. at 2859. Quite the contrary, the presumption "derives its legitimacy from" the judicial supposition "that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute." *Id*. at 2859–60 . . . . Indeed, while the FAA "embodies a strong federal policy in favor of arbitration, . . . the duty to arbitrate remains one assumed by contract." . . . Thus, the presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. *See Granite Rock*, 130 S.Ct. at 2858–59. Otherwise, the plain language of the contract controls.

In assessing whether a particular dispute falls within the scope of an arbitration clause, *we "focus [ ] on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." Medtronic AVE, Inc.*, 247 F.3d at 55 (quotation marks omitted). *In so doing, we "prevent[ ] a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009).

*CardioNet*, 751 F.3d at 172-73 (emphasis added; certain citations omitted).

## B.  Standard for Reviewing the Motion to Compel Arbitration

The Court of Appeals for the Third Circuit clarified the proper standards for evaluating a motion to compel arbitration or stay the federal litigation in *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013). *Guidotti* recognized that the Court's "precedents are not entirely clear on the standard for district courts to apply when determining whether, in a specific case, an agreement to arbitrate was actually reached . . . ," i.e., whether to treat such a motion "as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure[,]" or as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id*., at 771-72 (contrasting *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) (motion to compel arbitration treated as a Rule 12(b)(6) motion to dismiss) with *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980) (motion to compel arbitration treated as a Rule 56 motion for summary judgment)). As summarized recently by a colleague in the Eastern District of Pennsylvania:

> The United States Court of Appeals for the Third Circuit recently clarified the standards to be applied to motions to compel arbitration, and identified the circumstances under which courts should apply the standard for a motion to dismiss, and under which circumstances courts should apply a summary judgment standard. If "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.' "*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) . . . . If, however, "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question." *Id*. After any additional discovery is completed, "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id*. "In the event that summary judgment is not warranted because

'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is a 'genuine dispute as to the enforceability of the arbitration clause,' the 'court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting 9 U.S.C. § 4).

*Morina v. Neiman Marcus Group, Inc.,* 2014 WL 4933022, *6 (E.D. Pa. 2014) (additional citation omitted).

Post-*Guidotti*, the district courts of the Third Circuit have routinely applied the motion to dismiss standard where the Plaintiff does not dispute the fact that he executed an agreement to arbitrate, and the complaint, undisputed averments and undisputed documents attached to the motion to compel and response do not require the court to make factual findings in order to determine arbitrability. *Compare Morina*, 2014 WL 4933022 at *8-*9 (where Plaintiff did not dispute that he signed the agreement to arbitrate, and he did not "point[ ] to any additional evidence, documentary or otherwise, beyond his own affidavit to support his denial of an agreement to arbitration," motion to dismiss standard was appropriate);[1] *Glover v. Darway Elder Care Rehab. Ctr.*, 2014 WL 931459, *4 (M.D. Pa. 2014) ("whether the plaintiff's claims are subject to arbitration may be readily ascertained from the undisputed documents that both parties address in their moving papers. . . . [P]laintiff has opposed the motion to compel arbitration on the grounds that what was a manifestly voluntary arbitration agreement should be construed as an impermissible adhesive contract . . . [which] is a legal argument, and one that the plaintiff

---

[1] *Morina* further observed, 2014 WL 4933022 at *9:

> This is the type of situation on which the Third Circuit opined in *Par–Knit Mills* where they stated that, for purposes of the FAA, a naked assertion from the party trying to avoid arbitration would be insufficient to place the making of an agreement to arbitrate in issue, rather than a situation where there is a legitimate dispute created by "'an unequivocal denial that the agreement had been made, accompanied by supporting affidavits." *See Guidotti*, 716 F.3d at 778; *Par–Knit Mills*, 636 F.3d at 55.

does not support with facts or a credible argument to show that further discovery . . . is warranted . . . [T]he Court [should] consider this matter on the record that has been made with respect to the Darway defendants' motion to dismiss, which is governed by Rule 12(b)(6)"); *Golden Gate Nat'l Senior Care, LLC v. Addison*, 2014 WL 4792386, *3 (M.D.Pa. 2014) ("issue regarding whether Respondents' claims asserted in the state court action are subject to arbitration may be readily ascertained from the undisputed documents that both parties address in their moving papers . . . [which] can be resolved simply by looking to the terms of the agreement and the manner in which it was executed. Accordingly, Respondents have not shown that discovery into this matter is necessary, and, therefore, the court will consider this motion under the Rule 12(b)(6) standard"); *Thomas Global Group, LLC v. Watkins,* 2014 WL 1371719, *5 (D.N.J. 2014) ("universe of documents available . . . under [Rule 12(b)(6)] is duly circumscribed -- the district court can only consider the complaint, exhibits attached thereto, documents in the public record, and 'undisputedly authentic documents if the complainant's claims are based upon those documents.' . . . Where, however, this limited universe of documents 'is unclear regarding the agreement to arbitrate,' or if the plaintiff opposes the motion to compel with facts 'sufficient to place the agreement to arbitrate in issue,' a Rule 56 summary judgment standard is proper and a more deliberate pace required."); *Hughes v. Kolaras*, 2013 WL 5797735, *7 (D.N.J. 2013) (review under Rule 56 summary judgment standards appropriate where Plaintiff "presented sufficient evidence to question whether there was a meeting of the minds on the terms in the RCF Agreement, including the agreement to arbitrate . . . [;] identifies various inconsistencies in the document . . . ; and] one of the agreements is not signed, and the agreements that are signed bear a date next the signatures, unlike the RCF Agreement, in which there is no date included in

the signature line. Accordingly, the Court finds that Plaintiff's denial of the creation of the RCF Agreement, even though it appears to contain her signature, is more than a mere "naked assertion" that she "did not intend to be bound by the terms" of the agreement. *Par–Knit Mills*, 636 F.2d at 55").

Mr. Brown does not dispute that he knowingly executed the Sales Contract with Woltz & Wind containing the arbitration provision, and he acknowledges that the motion to compel is "based on an arbitration clause in a retail sales installment sales agreement . . . between the Plaintiff and [FMCC] the client of the Defendants." Plaintiff's Brief in Opposition (ECF No. 19) at 1. His challenge to enforcement of the arbitration provision is strictly a legal one, and his legal arguments are not supported by facts nor a convincing argument that further discovery into this issue is necessary to resolve any material factual disputes.[2] Because enforceability of the arbitration provision may be decided on the basis of the complaint, the Sales Contract upon which the debt collection was predicated, and the undisputed material facts, the Court will apply the motion to dismiss standard of Fed.R.Civ.P. 12(b)(6).

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under

---

[2] Plaintiff argues that at a "minimum, the Motion can not be decided without an opportunity by the Plaintiff to discover more information regarding the intention of the parties to the [Sales Contract], its formation, and the nature of the relationship between Ford and the Defendants." Plaintiff's Brief in Opposition (ECF No. 19) at 10. As discussed in text, these matters are not material to the Court's determination, even if Plaintiff had offered any facts to support his suppositions about the parties' intentions, the formation of the contract or the relationship between FMCC and Defendants.

*Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id*.

As the Court of Appeals for the Third Circuit explained in *Fowler*, "*Iqbal* extends the reach of *Twombly*," instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and that the plausibility determination must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 578 F.3d at 210–11 (citing *Iqbal*, 129 S.Ct. at 1949).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224).

### III.    Discussion

Plaintiff asserts that the arbitration provision should not be enforced for the following three reasons: it is unconscionable under Pennsylvania law, it does not apply to claims brought under the FDCPA, and it does not apply to Defendants.  For the reasons which follow, the Court disagrees, and finds that the arbitration provision contained in the Sales Contract is binding upon the parties in the instant matter.  The Court will address each of Plaintiff's arguments in turn.

### (1)    Arbitration provision is not unconscionable under Pennsylvania law

Federal courts "generally apply state contract principles to determine whether an arbitration agreement is unconscionable." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.,* 673 F.3d 221, 230 (3d Cir. 2012) (citing *Concepcion*, ___ U.S. ___, 131 S.Ct. at 1746). Under the

FAA, arbitration clauses are just as "valid, irrevocable, and enforceable" as any other contractual obligation, 9 U.S.C. § 2, and cannot be invalidated by "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, ___ U.S. ___, 131 S.Ct. at 1746. Courts may only invalidate arbitration clauses on the grounds of "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id*. (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). As summarized by the Court of Appeals for the Third Circuit:

> In Pennsylvania, unconscionability is a general defense to contract formation. *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115, 119 (2007). For a contract to be unconscionable, it must be both procedurally and substantively unconscionable. *Gay v. CreditInform*, 511 F.3d 369, 392 (3d Cir.2008). Procedural unconscionability exists when the party challenging the contractual provision had "an absence of meaningful choice in accepting [it]." *Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 608 A.2d 1061, 1068 (1992) (citing *Witmer v. Exxon Corp.*, 495 Pa. 540, 434 A.2d 1222, 1228 (1981)). Substantive unconscionability exists when the contractual provision is "unreasonably favorable" to the party who imposed it. *Witmer*, 434 A.2d at 1228.

*Antkowiak v. Taxmasters*, 455 F.App'x 156, 159 (3d Cir. 2011).

A contract of adhesion is a "form contract prepared by one party, to be signed by the other party in a weaker position, [usually] a consumer, who has little choice about its terms." *Antkowiak*, 455 F.App'x at 159-60 (citing *McNulty v. H & R Block, Inc.,* 843 A.2d 1267, 1273 (Pa.Super.Ct. 2004)). Such contracts of adhesion are *per se* procedurally unconscionable under Pennsylvania law. *Id*. The Court assumes, without deciding, that the arbitration clause in Plaintiff's Sales Contract is a contract of adhesion and, therefore, is procedurally unconscionable. Plaintiff has offered nothing, however, to support his argument that the arbitration provision is substantively unconscionable.

Substantive unconscionability relates to the specific terms contained within the agreement itself. *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 487 (E.D.Pa. 2011). Substantive unconscionability is found where the agreement contains contractual terms "that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). "An arbitration agreement cannot be substantively unconscionable if it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum. . . .'" *Williams v. Nabors Drilling USA, LP*, 2014 WL 710078, *4 (W.D.Pa. 2014) (Conti, J., quoting *Edwards v. HOVE NSA, LLC*, 497 F.3d 355, 364 (3d Cir. 2007)). For example, the FAA preempts California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts; in light of the preemptive effect of the FAA, a court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable. *Concepcion*, ___ U.S. ___, 131 S.Ct. at 1749.

Plaintiff claims the arbitration provision in his Sales Contract is substantively unconscionable because it is a contract of adhesion (which argument properly belongs to the procedural unconscionability argument), and because the arbitration clause is one-sided since:

> the parties are responsible for their own costs, except that the Defendants agree to pay the 'filing fee' if they demand Arbitration first. Obviously, this excludes travel costs to the Arbitration hearing, the Arbitrator's own fee, the Plaintiff's attorneys fees, and any other costs associated with the Arbitration hearing. These costs could easily outweigh the Plaintiff's potential recovery in an FDCPA case, which is limited to a maximum of $1,000.00 in statutory damages plus actual damages. In a case such as this, where a consumer has little or no actual damages, enforcing the Arbitration agreement would effectively bar the Plaintiff's right to recovery.

Plaintiff's Brief in Opposition (ECF No. 19) at 5.

There is no legal or factual merit to Plaintiff's substantive unconscionability argument. Factually, Plaintiff's interpretation of the plain language of the arbitration provision is tortured. That clause states, *inter alia*, that "*You may choose* the organization to conduct the arbitration subject to our approval. . . . *We will pay your total reasonable arbitration fees and expenses* (not including attorney fees, except where applicable law otherwise provides) *in excess of $125. We will pay the whole filing fee if we demand arbitration first*." Because Defendants in fact demanded arbitration first, they will pay the *entire filing fee*. Defendants also are obligated to pay his "total reasonable arbitration fees and expenses" in excess of $125, and his attorney fees if he prevails on his FDCPA claims (the FDCPA provides the "applicable law" which "otherwise provides").

Moreover, there is no legal merit to his argument. Although Plaintiff bemoans that in "a case such as this, where a consumer has little or no actual damages, enforcing the Arbitration agreement would effectively bar [his] right to recovery," the FDCPA provides for the award of "actual damages, attorney's fees and costs, as well as statutory damages up to $1,000." *F.T.C. v. Check Investors, Inc.,* 502 F.3d 159, 166 (3d Cir. 2007) (citing 15 U.S.C. § 1692k(a)). Nothing in the arbitration clause alters the rights and remedies available to Plaintiff in an arbitration, and a class action waiver provision in an arbitration agreement certainly does not render such agreement to arbitrate unconscionable. *See Concepcion,* ___ U.S. ___, 131 S.Ct. 1740.

The fee splitting provisions are eminently reasonable on their face, and Plaintiff offers no affidavit or even any averments to support his claim that paying his portion of fees and costs would be prohibitive or onerous, or that anything else about the arbitration clause would impair his ability to pursue all rights and liabilities available to him in litigation. In short, Plaintiff has

failed to meet his burden of showing substantive unconscionability. *See Antkowiak* 455 F.App'x at 160 ("While the requirement that Antkowiak bear all arbitration costs is notably more one-sided than expense provisions we have previously considered, the provision is only substantively unconscionable if it prevents Antkowiak from vindicating his rights in the arbitral forum.") (quoting *Green Tree*, 531 U.S. at 90–91); *Somerset Consulting*, 832 F.Supp.2d at 488 (under Pennsylvania law, "the burden of establishing unconscionability lies with the party seeking to invalidate a contract, including an arbitration agreement, and there is no presumption of unconscionability associated with an arbitration agreement merely on the basis that the agreement reserves judicial remedies . . . .") (quoting *Salley*, 925 A.2d at 129).[3]

### (2)     Fair Debt Collection Practices Act claims are covered

The arbitration provision in Plaintiff's Sales Contract is broad and encompassing; it covers "any Claim related to this contract" including but not limited to "Claims in *contract, tort, regulatory or otherwise*; . . . 3) Claims between you and us, *your/our employees, agents, successors, assigns, subsidiaries, or affiliates*; [and] 4) Claims *arising out of or relating to . . . this contract*, *or any resulting transaction or relationship*, including that with the dealer, or any such relationship *with third parties who do not sign this contract*." Sales Contract (ECF No. 14-1). Although Plaintiff attempts to parse the meaning out of each of these terms, pulling them out of context and isolating them from each other, FDCPA claims surely sound in "contract, tort, regulatory or otherwise," and definitely are related to the contract and a resulting transaction and relationship to the contract. Woltz & Wind assigned the Sales Contract to FMCC, which in turn

---

[3] To meet this burden, the Court of Appeals has "required a party challenging an expense provision to show (1) the projected costs that would apply and (2) the party's inability to pay those costs." *Antkowiak*, 455 F.App'x at 160-61 (citing *Parilla v. IAP Worldwide Servs. VI, Inc*., 368 F.3d 269, 283–85 (3d Cir. 2004); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 268–69 (3d Cir. 2003).

"directly or through intermediate transactions assigned, placed, or transferred the Brown Obligation to Sklar-Markind for collection." Complaint (ECF No. 1) at ¶ 21 (emphasis added). By Plaintiff's own complaint, therefore, it is evident that his FDCPA claim is subject to the arbitration provision in the Sales Agreement.

In *CompuCredit Corp. v. Greenwood*, ___ U.S ___, 132 S.Ct. 665 (2012), the United States Supreme Court held that that the Credit Repair Organizations Act ("CROA"), section 409, 15 U.S.C.A. § 1679g, did not foreclose an agreement to arbitrate claims brought pursuant thereto, and reiterated that the FAA requires courts to enforce agreements to arbitrate according to their terms, "*even when the claims at issue are federal statutory claims*, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" ___ U.S. ___, 132 S.Ct. at 668-69 (emphasis added) (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).  In *CompuCredit*, plaintiffs brought a class action complaint in federal court in the Northern District of California, alleging CompuCredit violated the CROA by making misleading representations to its Aspire Visa credit card holders that their cards could be used to rebuild poor credit, and with regard to assessment of fees upon opening their accounts. In their applications, they agreed to be bound by a provision which read: "Any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to your Account, any transferred balances or this Agreement (collectively, 'Claims'), upon the election of you or us, will be resolved by binding arbitration. . . ."  The district court and the Court of Appeals for the Ninth Circuit held that Congress intended to exempt CROA claims from the FAA, and declined to enforce the arbitration clause.

The Supreme Court considered the CROA, and concluded that "[b]ecause the CROA is silent on whether claims under the Act can proceed in an arbitrable forum, the FAA requires the arbitration agreement to be enforced according to its terms." ___ U.S. ___, 132 S.Ct. 673. The Court rejected plaintiffs' argument that "the CROA's civil-liability provision, § 1679g . . . demonstrates that the Act provides consumers with a 'right' to bring an action in court . . . [citing] the provision's repeated use of the terms "action," "class action," and "court" - terms that they say call to mind a judicial proceeding . . . ," stating:

> These references cannot do the heavy lifting that respondents assign them. It is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit. If the mere formulation of the cause of action in this standard fashion were sufficient to establish the "contrary congressional command" overriding the FAA, *McMahon, supra,* at 226, 107 S.Ct. 2332, valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law.

___ U.S. ___, 132 S.Ct. at 670.

The Age Discrimination in Employment Act, the Racketeer Influenced and Corrupt Organizations Act, and the Clayton Act, all created civil causes of action, but the Supreme Court found that none of these statutes implicitly exempted such causes of action from arbitration under the FAA pursuant to arbitration agreements. *Id.,* ___ U.S. ___, 132 S.Ct. at 670-71 (citations omitted). *See also Gay v. CreditInform,* 511 F.3d 369 (3d Cir. 2007) (predating *CompuCredit*, Court of Appeals for the Third Circuit held that repeated references to "court" in the CROA, and the CROA's explicit reference to "class actions," did not confer right on consumers to pursue relief in judicial forum or to litigate their claims on class action basis, and did clearly manifest legislative intent to prevent parties from entering into agreement to arbitrate their claims).

In *American Express Co. v. Italian Colors Restaurant*, ___ U.S. ___, 133 S.Ct. 2304 (2013), Italian Colors Restaurant and other merchants brought a class action against American Express for alleged violations of federal antitrust laws, namely the Sherman Act and the Clayton Act. The Court of Appeals for the Second Circuit held that "they would incur prohibitive costs if compelled to arbitrate under the class action waiver," rendering the class action waiver in the arbitration agreements unenforceable. The Supreme Court reversed the Circuit Court, finding no "contrary congressional command requires us to reject the waiver of class arbitration" for anti-trust claims in light of the "overarching principle that arbitration is a matter of contract. . . . [, and that] courts must "rigorously enforce" arbitration agreements according to their terms . . . [, a principle which] "holds true for claims that allege a violation of a federal statute . . . ." *Id.*, ___ U.S. ___, 133 S.Ct. at 2309 (quoting *CompuCredit Corp.*, ___ U.S. ___, 132 S.Ct. at 668–669).

Because the FAA requires courts to enforce agreements to arbitrate according to their terms even when the claims at issue are federal statutory claims, and because the FDCPA is silent with regard to arbitration of claims brought under its auspices, the overwhelming majority of cases to consider the matter have, not surprisingly, compelled arbitration of FDCPA claims finding such claims not categorically exempt from the FAA's reach. *See, e.g.*, *Antkowiak*, 455 F.App'x 156 (concluding that the plaintiff's FDCPA claims may be compelled to arbitration under FAA);[4] *Montalbano v. Cavalry Portfolio Serv., LLC,* 2013 WL 593988, *1, *7 (W.D. Pa. 2013) (holding that the plaintiff's claims, which included alleged violations of the FDCPA, must be compelled to arbitration); *Sweiger v. Calvary Portfolio Serv., LLC*, 2012 WL 1940678, *1 – *4 (W.D. Pa. 2012) (same); *Shetiwy v. Midland Credit Mgmt.*, 959 F.Supp.2d 469, 475 (S.D.

---

[4] Although *Antkowiak* did not expressly state that the FAA is applicable to FDCPA claims, in vacating and remanding the district court's finding of substantive unconscionability, it implicitly acknowledged that such claims fall within the FAA.

N.Y. 2013) (holding that the arbitration agreements at issue were enforceable as to the plaintiff's FDCPA claims, so the action was stayed pending arbitration); *Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861 F.Supp.2d 724 (E.D. Va. 2012) (holding that the FAA criteria for enforcing arbitration had been met with respect to plaintiff's FDCPA claims); *O'Fallon v. Encore Receivable Mgmt., Inc.*, 831 F.Supp.2d 957, 966 (S.D. Miss. 2011) *aff'd.* 466 F. App'x 325 (5th Cir. 2012) (compelling the plaintiff to submit his FDCPA claim to arbitration); *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F.Supp.2d 827, 831 (N.D. Ohio 2008) ("Congress did not intend FDCPA claims to be non-arbitrable. Courts routinely permit arbitration of such claims."); *MBNA America Bank, N.A. v. Ruhl*, 2007 WL 1031553, * 2 (M.D. Pa. 2007) ("District Courts in our sister circuits have upheld the enforceability of the subject Arbitration Provision in suits filed against MBNA and have entered orders compelling arbitration of consumer's federal claims, such as the [FDCPA]." (citing *Feil v. MBNA America Bank*, 417 F.Supp.2d 1214 (D.Kan. 2006)).

This Court will follow the majority lead, and holds that FDCPA claims are subject to arbitration by agreement of the parties, and are covered by the agreement to arbitrate in Plaintiff's Sales Agreement.

### (3)    Defendants may enforce arbitration provision

Even though Sklar-Markind and the individual Defendants are non-signatories to the Sales Contract containing the arbitration provision, Defendants are entitled to compel arbitration of Mr. Brown's FDCPA claim.  As noted in the preceding section, the terms of the Sales Contract, which Plaintiff indisputably executed, are broad and encompassing.  Plaintiff avers in the Complaint that his creditor "either directly or through intermediate transactions assigned,

placed, or transferred the Brown Obligation to Sklar-Markind for collection." Complaint (ECF No. 1) at ¶ 21.  Indeed, the Sales Contract applies to said allegations, expressly stating that the agreement is enforceable not only as to claims between Plaintiff and Wolf & Wind, but also as to claims involving their "employees, agents, successors, assigns, subsidiaries, or affiliates." Sales Contract (ECF No. 14-1); *see also CardioNet*, 751 F.3d at 178 ("It is a basic principle of assignment law that an assignee's rights derive from the assignor;" thus, "'an assignee of a contract occupies the *same legal position* under a contract as did the original contracting party…'") (quoting 6A C.J.S. *Assignments* § 110).  Further, although Plaintiff argues that Defendants, as third-party non-signatories, cannot enforce the arbitration provision, the Sales Contract expressly provides otherwise, stating that it applies to "any resulting transaction or relationship, including that with the dealer, or any result transaction with third parties who do not sign this contract." *Id.*  Moreover, Plaintiff does not dispute that the debt collection activities of Defendants in this case specifically arose from and were dependent upon the Sales Contract containing the arbitration agreement.

Thus, a plain reading of both the Sales Contract and the Complaint clearly indicate that the arbitration provision is applicable to Sklar-Markind, its employees, and its lawyers – the alleged debt collectors in this case.  The fact that Defendants are non-signatories to the Sales Contract does not prevent them from enforcing the arbitration provision under the circumstances. *See Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014) ("[C]ourts have bound a signatory to arbitrate with a non-signatory at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intimately

founded in and intertwined with the underlying contract obligations.") (internal alterations and quotations omitted) (quoting *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001)); *In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*, 133 F.3d 225, 229 (3d Cir. 1998) ("The identification of the parties bound by the agreement to arbitrate need not be confined to the limited inquiry of identifying the signatories to the arbitration agreement. Rather, the dispositive finding is an express and unequivocal agreement between parties to arbitrate their disputes.") (citations and internal quotations omitted)); *Aluminum Bahrain B.S.C. v. Dahdaleh*, 2014 WL 1681494, *4 – *5 (W.D. Pa. 2014) (holding that the non-signatory defendant could enforce the arbitration agreement under both an agency theory and equitable estoppel theory); *Sweiger*, 2012 WL 1940678 (holding that a law firm hired to collect a debt from the plaintiff could enforce the arbitration agreement entered into between the plaintiff and its client); *Hornicek v. Cardworks Servicing, LLC*, 2011 WL 2623274, *3 (E.D. Pa. 2011) (finding that the arbitration agreement applied to the non-signatory defendant based upon the express language of the agreement).

Accordingly, given that the express terms of the Sales Agreement and the arbitration provision apply to "third parties who do not sign this contract," Plaintiff's argument that the Defendants cannot enforce the arbitration provision because they are non-signatories is without merit.

## IV.    Conclusion

Based on the foregoing, Defendants' motion to compel arbitration and stay proceedings is granted.  An appropriate Order follows.

By the Court:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS MICHAEL BROWN, an individual; on behalf of himself and all others similarly situated,<br>     Plaintiffs, | ) ) ) ) ) | |
|      v. | ) ) | Civil Action No. 14-0266<br>United States Magistrate Judge |
| SKLAR - MARKIND a/k/a MARKIND LAW GROUP, P.C. a/k/a LAW OFFICES OF ANDREW SKLAR, P.C., ANDREW SKLAR, individually and in his official capacity, LLOYD MARKIND, individually and in his official capacity, JORDAN W. FELZER, individually and in his official capacity, and JOHN AND JANE DOES NUMBERS 1 THROUGH 25,<br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Cynthia Reed Eddy |

## ORDER

**AND NOW**, this 7th day of November, 2014, having considered Defendants' Motion to Compel Arbitration and Motion to Stay Proceedings ("Motion") (ECF No. 14) and Brief in Support thereof (ECF No. 15), as well as Plaintiff's Response to Motion (ECF No. 18) and Brief in Opposition (ECF No. 19) and Defendant's Reply Brief (ECF No. 21), **IT IS HEREBY ORDERED** that Defendants' Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall proceed to arbitration in accordance with the terms of the written arbitration agreement.

**IT IS FURTHER ORDERED** that the matter shall proceed on an individual basis and not as a class action.

**IT IS FURTHER ORDERED** that the matter and all related deadlines are **STAYED** pending the completion of arbitration.  Accordingly, the action will be administratively closed until further notice of Court.

By the Court:

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF